**Willis FEENEY, Appellant,**

**v.**

**SCOTT COUNTY, Iowa and the City of Davenport, Iowa, a Municipal Corporation, Appellees.**

**No. 63243.**

Supreme Court of Iowa.

April 23, 1980.

Gordon E. Allen, Des Moines, and John R. Aitken, Davenport, for appellant.

Seymore Raben and Celeste Bremer, Davenport, for appellees.

Considered by REYNOLDSON, C. J., and REES, HARRIS, McGIVERIN, and LARSON, JJ.

LARSON, Justice.

In the course of an investigation for the Scott County Civil Service Commission, sheriff's deputy Charles Vollmer found a small index card in the files of the Davenport Police Department, which has become the source of this litigation. Willis Feeney, the job applicant referred to on the card, contends the police had no right to disseminate this information to Vollmer and that he had no right to redisseminate it to the commission.

This appeal raises, for the first time in this court, issues of interpretation of our statute on accumulation and distribution of criminal history and intelligence data, chapter 749B, The Code 1975 (now found and hereinafter referred to as chapter 692). The plaintiff, alleging violations of the act,

obtained an award for damages and attorney's fees against the City of Davenport and Scott County. He appealed from that judgment, asserting that the trial court erred (1) in finding that there were only two violations of the act, resulting in an insufficient damage award in view of the statutory minimum of $100 per violation, (2) in failing to award exemplary damages, and (3) in setting the amount of attorney's fees. He also asks that we award attorney's fees incurred in prosecuting this appeal. (His original prayer for expungement of the records is not raised on appeal.) We affirm in part, reverse in part, and remand the case to the trial court.

In April, 1975, Willis Feeney applied, along with fifty-two others, for a position as deputy with the Scott County Sheriff's Office. He took and passed the examination administered by the Scott County Civil Service Commission, which then conducted a background check of the applicants. The information was actually gathered for the commission by Vollmer, who was assigned to that duty by the sheriff. He delivered his investigation notes to the commission's secretary, who typed them and distributed them to the commissioners. Feeney was granted a personal interview with the commission but failed to make the list of the top ten candidates which the commission certified to the sheriff. He later filed suit against Scott County and the City of Davenport claiming dissemination of information from the files of the police department to the commission was proscribed by section 692.3. He prayed for $60,000 actual and $100,000 punitive damages. The trial court found that there were two violations of the act but, because it found no actual damages were proved, awarded only $500 damages based upon section 692.6 (which provides for a minimum allowance of $100.00) and declined to award any exemplary damages. Statutory attorney's fees in the amount of $500 were awarded.

The disseminated information was entered on a 3″ × 5″ index card identifying Feeney, and stating:

4–23–73 Report of abv's [Feeney's] name given ref. poss. selling drugs (D–53–418A)

This card referred to supplemental reports also on file at the police department which showed that an anonymous telephone call had been received at the Davenport Park Board Office to the effect that on a shelter door at one of the parks there was a list of drugs with prices and instructions to "Call Bob 323–4307." The police report further said "[a] check in the city directory showed this number listed to W. D. Feeney. Checked OCU files and could not find anybody by this name in our files. . . . We tried calling the number with negative results. We will continue to call until we get a response." No further developments in the drug matter were shown by the records, and no evidence showed any involvement by Feeney in drug trafficking or use.

At the time of the personal interview of Feeney, one of the commissioners asked him about the matter. Because Feeney became upset by the question, Commissioner Porter agreed to check into it further. He later accompanied Sgt. Vollmer on a return trip to the police department where Vollmer was again shown the information. It was also shown to Porter at that time. Porter decided there was no factual basis for concluding that Feeney was involved in any drug dealing and indicated this on his application record.

This action was tried to the court at law, and the court's findings of fact are therefore binding upon us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). The operative facts are largely undisputed; our disagreement with the trial court resolution of the dispute is based upon our interpretation of chapter 692.

■ I. *Alleged Violations.* Chapter 692 deals with the maintenance and dissemination of criminal agency data. It divides data into three categories. Section 692.1 provides, in part:

3. *"Criminal history data"* means any or all of the following information maintained by the department or bureau in a

manual or automated data storage system and individually identified:

 *a.* Arrest data.

 *b.* Conviction data.

 *c.* Disposition data.

 *d.* Correctional data.

11. *"Intelligence data"* means information collected where there are reasonable grounds to suspect involvement or participation in criminal activity by any person.

12. *"Surveillance data"* means information on individuals pertaining to participation in organizations, groups, meetings or assemblies, where there are not reasonable grounds to suspect involvement or participation in criminal activity by any person.

Because there was no arrest or other proceedings as required by section 692.1(3), the information as to Feeney is clearly not "criminal history data." Nor is it "surveillance data" because there is no "participation in organizations, groups, meetings or assemblies" shown. It seems clear, therefore, that if the data here falls into any of the categories set out in section 692.1, it is "intelligence data." This was also the conclusion of the trial court. Categorization of the data is important because the duties and restrictions imposed by the act turn to some extent on the type of data involved.

Dissemination limitations of the statute also vary according to whether the organization in possession of the data is "the department" (department of public safety, § 692.1(1)) or "bureau" (division of criminal investigation and bureau of identification, § 692.1(2)) or some other criminal justice agency. " '*Criminal justice agency'* means any agency or department of any level of government which performs as its principal function the apprehension, prosecution, adjudication, incarceration, or rehabilitation of criminal offenders." § 692.1(10).

Restrictions on dissemination by peace officers, criminal justice agencies and state or federal regulatory agencies are set out in section 692.3. That section first deals with dissemination of *criminal history* data (not pertinent here except for purposes of comparison) as follows:

A peace officer, criminal justice agency, or state or federal regulatory agency *shall not redisseminate criminal history data,* within or without the agency, *received from the department or bureau,* unless:

1. The data is for official purposes in connection with prescribed duties of a criminal justice agency, and

2. The agency maintains a list of the persons receiving the data and the date and purpose of the dissemination, and

3. The request for data is based upon name, fingerprints, or other individual identification characteristics. [Emphasis added.]

That section then limits redissemination of *intelligence* data as follows:

A peace officer, criminal justice agency, or state or federal regulatory agency *shall not redisseminate intelligence data, within or without the agency, received from the department or bureau or from any other source,* except as provided in subsections 1 and 2. [Emphasis added.]

Thus, dissemination of *criminal history* data is restricted only if it was originally "received from the department or bureau." By contrast, dissemination of *intelligence* data is restricted regardless of the source.

In this case, therefore, the propriety of dissemination of *intelligence* data, governed by the last paragraph of section 692.3, depends on (1) its being "for official purposes in connection with prescribed duties of a criminal justice agency," and (2) "[t]he agency maintain[ing] a list of the persons receiving the data and the purpose of the dissemination . 1. . ." § 692.3.

The appellant argues that twelve violations are shown. In support of that argument, he cites section 692.6:

Any person may institute a civil action *for damages under chapters 25A or 613A* or to restrain the dissemination of his criminal history data or intelligence data in violation of this chapter, and *any person,* agency or governmental body *proven*

*to have disseminated or to have requested and received* criminal history data or intelligence data in violation of this chapter *shall be liable* for actual damages and exemplary damages *for each violation* and shall be liable for court costs, expenses and reasonable attorneys' fees incurred by the party bringing the action. In no case shall the award for damages be less than one hundred dollars. [Emphasis added.]

Feeney argues that the evidence establishes five *request* violations (three from the commissioners to Sgt. Vollmer and one each from Vollmer and Porter to the records custodian) and seven *dissemination* violations (two from the records custodian to Vollmer (once on each visit), one by the custodian to Porter and four from Vollmer to the three commissioners and their secretary).

The trial court found that there were two violations of chapter 692. It found that the failure of the Davenport Police Department to maintain a list of their disseminations constituted one violation of the act. The second violation was the dissemination of the data from the Scott County Sheriff's Office to the Scott County Civil Service Commission. The opinion indicates that this ruling was grounded on the trial court's belief that the statute allows dissemination of intelligence data by a criminal justice agency only to other criminal justice agencies.

■■■ (a) The "dissemination" violations. The trial court's ruling that the dissemination from Vollmer to the commission was illegal was premised on the belief that the act limits dissemination of data by one criminal justice agency only to another criminal justice agency. The commission, admittedly, is not a criminal justice agency. However, we disagree with the trial court's assessment of the statutory limitation. By only requiring that the "data [be used] for official purposes in connection with prescribed duties of a criminal justice agency," § 692.3(1), the statute does not limit who may receive such data. No other conclusion is reasonable in light of the explicit limita-

tion of permissible recipients of information from the department or bureau. *Compare* § 692.3 *with* § 692.2 ("The department and bureau may provide copies or communicate information from criminal history data *only to* criminal justice agencies, or such other public agencies as are authorized by the confidential records council. . . .") (emphasis added) *and* § 692.8 ("Intelligence data in the files of the department may be disseminated *only to* a peace officer, criminal justice agency, or state or federal regulatory agency, *and only if* the department is satisfied that the need to know and the intended use are reasonable.") (emphasis added). This may appear to be a fine distinction, but we are required to draw it. Chapter 692 is a criminal statute, *see* § 692.7, and such statutes must be strictly construed. *State v. Lawr*, 263 N.W.2d 747, 750 (Iowa 1978); 3 A. Sutherland, *Statutes and Statutory Construction* § 59.03 (4th ed. C. Sands 1974). We can only assume that in drawing this distinction the legislature contemplated that there could be situations where someone other than a criminal justice agency could nonetheless use such "data . . . for official purposes in connection with the prescribed duties of a criminal justice agency." § 692.3(1). We must determine whether we are presented with such a situation here.

It is the sheriff's duty to appoint his deputies. § 341A.8. "All [such] appointments to . . . classified civil service positions in the office of the county sheriff shall be made solely on merit, efficiency, and fitness, which shall be ascertained by open competitive examinations and impartial investigations . . . ." *Ibid.* In addition, the Iowa Law Enforcement Council is charged with the duty of promulgating "[m]inimum standards of physical, educational, mental and moral fitness which shall govern the appointment of law-enforcement officers." § 80B.11(4), The Code 1979; *see* § 80B.3(3). Pursuant to that authority, the council has promulgated the following rule:

In no case shall any person hereafter be recruited, selected or appointed as a law enforcement officer unless such person:

. . . . .

(5) Is not a drug addict or a drunkard.

(6) Is of good moral character as determined by a thorough background investigation including a fingerprint search conducted of local, state and national fingerprint files and has not been convicted of a felony or a crime involving moral turpitude.

I.A.C. § 550–1.

█ The record reveals that the commission conducted these background checks for the Scott County Sheriff's Department and that information was used only to assess the applicants' qualifications. The record is devoid of any indication that the information was ever disseminated by the commission, which merely submitted a list of the ten approved applicants to the sheriff. The divulgence of the information by the police department to Vollmer was "for official purposes in connection with prescribed duties of a criminal justice agency." Under the act, the sheriff, or in this case the commission acting for him, was authorized to obtain the data in question; a sheriff's department is clearly a "criminal justice agency." We cannot agree with the appellant who argues that a sheriff could not obtain such information concerning a potential deputy unless he made the request directly, and that a civil service commission could not obtain it for him. To adopt this view would mean a sheriff's office must either make the investigation itself and thereby ignore the clear direction of chapter 341A that such investigations be made by the commission, or be denied access to information so imperative to selection of a deputy sheriff as a possible record of criminal involvement. We cannot ascribe to the legislature an intent to limit his choices in this way.

█ Our conclusion that the divulgence of the information to the commission was for official purposes under the statute does not, however, end the matter of the defendants' liability. Section 692.3 proscribes dissemination by any peace officer or criminal justice agency "*within or without* the agency" without satisfying the requirements that it be for official purposes of a criminal justice agency and that the agency ascertain the purpose and maintain a log of the dissemination. The first requirement was met, because the data was for "official purposes," as previously discussed; however, Vollmer testified that no log was maintained to record this dissemination. We conclude the court erred in failing to find a violation on this ground. We reach this conclusion somewhat reluctantly because of the obvious practical problems created by it. For example, in a criminal justice agency, a record seemingly must be maintained on all data covered by the act every time it is transferred among officers, secretaries, filing clerks and typists, even when they are in the same office. However, we have often said that it is not for us to determine the wisdom of the legislation before us. *See, e. g., Iowa Natural Resources Council v. VanZee,* 261 Iowa 1287, 1293, 158 N.W.2d 111, 115 (1968). Similarly, the city concedes that it did not maintain the required "list of the persons receiving the data and the date and purpose of the disseminations" and thereby failed to perform one of the conditions precedent to lawful release of the data under the act. The trial court found one violation in the two disseminations to Vollmer, based upon that department's failure to maintain such a record. It apparently concluded that the failure to maintain the record was a single, continuing, violation. We do not agree; the act requires ascertainment of purpose and logging of identity of the requesting party as conditions precedent to each dissemination of intelligence data. *See* § 692.-3(2) (and last unnumbered paragraph). Thus, two disseminations made without compliance constitute two violations by the police department—not one as found by the trial court.

Plaintiff contends that three additional disseminations were improperly made by Vollmer: one to each of the three commissioners. However, there was no evidence of any dissemination to the individual commission members by Vollmer, as the trial court properly concluded.

Appellant also contends that an illegal dissemination was made by the police department to Commissioner Porter when he accompanied Vollmer on the second call on the department. The records clerk denied any direct dissemination to Porter, although it was shown that Porter actually saw the card which Vollmer received. This was a part of the dissemination which we have already said violated the act; we cannot say it was a second violation because, on the same occasion, it was seen by more than one person. This seems to be the only reasonable interpretation of the statute; it is the number of acts of dissemination which determine the number of violations, not the number of persons who obtain the information from a single act of dissemination. To adopt a contrary view would mean that a single act of dissemination which reached the news media, for example, could result in an almost infinite number of violations. We conclude that there was no separate violation by the police department as to Porter.

To summarize the matter of the dissemination violations urged by plaintiff on appeal, we conclude three were established: two from the police department to Vollmer and one from Vollmer to the commission secretary. We do not attempt to ascertain damages as to the one additional violation found by us on appeal but remand to the trial court for that purpose.

(b) *The "request" violations.* Feeney contends the three civil service commissioners "requested" the information from Vollmer, and this constituted three of the five "request" violations. There is no evidence, however, that the commission, in merely requesting the investigation, asked for disclosure of any such data.[1] The court was correct in finding no violations of the act on this basis. Feeney also claims there was an illegal request from Porter to the custodian of the police department when he

accompanied Vollmer on his second visit to the police department. We have already concluded that these individuals were authorized to receive such information because they requested it for official purposes, but that the dissemination was improper because of the failure to log it. Was the *request* a separate violation because the resulting dissemination was improper? Again, the act is not clear; it does not elaborate on what constitutes a "request and recei[pt] in violation of this chapter" under section 692.6. Possibly, a person or agency not authorized to receive criminal history data could run afoul of that provision merely by making a request for information. But what about the case where a person or agency is authorized to receive the data but the dissemination is illegal because the disclosing party, after the request, failed to log the required information? These duties are placed upon the disseminator of the information, not the requesting party. See § 692.3(2). We do not believe that the statute should be interpreted to impose liability upon a requesting party under these circumstances, merely because the subsequent failure of the disseminator to abide by the terms of the statute vitiates the legality of the disclosure. We conclude that Vollmer and Porter's requests to the police department did not violate the terms of chapter 692, even though, as we have already discussed, the resulting dissemination did.

II. *Damages.* The plaintiff contends that because section 692.6 provides for a minimum of $100 per violation, the award of $500 was inadequate. However, he argues this on the basis that twelve violations occurred. We have found only three. We conclude that, because the damages assessed by the trial court for the two violations found by it exceeded the minimum provided by statute, we will not inter-

---

1. The only indication in the record of the substance of the request was for "anything that would disqualify them from serving as a law enforcement officer . . . such as being convicted of a felony, drunk driving or such." As criminal history data, *see* § 692.1(3), dis-

semination by Sgt. Vollmer to the commission would be without restriction since it was obtained from the Davenport Police Department rather than from the department or bureau. § 692.3.

fere with them, particularly in view of the almost total lack of evidence of actual damage. As to the one additional violation established on appeal, the case should be remanded for damage assessment by the trial court.

III. *Punitive damages.* The trial court ruled:

No award can be made to plaintiff for exemplary damages. No evidence indicated gross, willful, or wanton disregard of the law, or malice toward the plaintiff, and the court sees no reason to punish the City of Davenport or Scott County for the actions of employees or representatives pursued with a sincere desire to secure candidates for the position of Scott County Deputy Sheriffs of the highest integrity and moral qualifications.

 Exemplary damages are not awarded as a matter of right; rather, their allowance rests with the factfinder. *Young v. City of Des Moines,* 262 N.W.2d 612, 620 (Iowa 1978). Their award "depends upon whether under the facts in a particular case such [an] award is appropriate in order to punish an offending party or discourage others from similar wrongful conduct." *Meyer v. Nottger,* 241 N.W.2d 911, 922 (Iowa 1976). This determination depends upon the existence of malice—either actual or legal malice. "[L]egal malice . . . may be established by showing wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights." *McCarthy v. J. P. Cullen & Son Corp.,* 199 N.W.2d 362, 369 (Iowa 1972).

A fair reading of the trial court opinion indicates that it found that Feeney failed to establish either actual or legal malice. Such a trial court finding that the party has failed to carry his burden of proof with respect to an issue will not be disturbed "unless we find the party has carried his burden *as a matter of law.* The evidence in the party's favor must be so overwhelming that no other reasonable inference could be drawn." *Kurtenbach v. TeKippe,* 260 N.W.2d 53, 54 (Iowa 1977).

 The evidence reveals that at the time these disseminations occurred, the Davenport Police Department did not maintain a log. The sheriff testified he was unfamiliar with the law and has not conducted any classes for his men about his requirements, and Sgt. Vollmer testified he has never received any training regarding the law. Plaintiff asserts in his brief that this evidence establishes a "continuing . . . intentional and willful disregard for the rights of Mr. Feeney and others." We may assume that a rational factfinder could so conclude. However, there is also contradictory evidence. For instance, in the interim the Davenport Police Department has instituted a log, and employees in the records department and members of the police department have been instructed about the law. Also, there is nothing in the record to indicate that any information was ever disseminated for any unofficial purposes. Because the evidence is conflicting, we cannot say the trial court's ruling that these actions do not merit punishment is unreasonable.

IV. *Attorney's fees.* Section 692.6 authorizes an award of attorney's fees in civil actions for violation of the act. At the close of plaintiff's evidence, the following dialogue took place:

MR. ALLEN: . . . We would . . . request that the record remain open for purposes of submitting an itemized statement as to attorney's fees as Chapter [692].6 allows us.

THE COURT: Perhaps the parties can agree—if you present the statement to them—by stipulation.

MR. DARBYSHIRE: I'm not going to stipulate to that; no way.

THE COURT: Okay, I'll determine that then.

When the court issued its ruling, it made the following provision with respect to attorney's fees:

Plaintiffs set forth in their brief a request for $2,000.00 in attorney's fees. No supporting documentation or data is supplied concerning the attorney's fees, other than that plaintiff's attorneys indicate they believe this amount to be reasonable.

Counsel for defendants requested, at the conclusion of the evidence, that such documentation be provided by plaintiff's attorneys. No statement of actual expenses incurred, time records showing hours expended and what has been done or other matters which ordinarily go into a determination of whether a fee is reasonable has been offered by plaintiff's counsel.

The matter of the determination of reasonable fees, in any event, is solely within the sound discretion of the court, and the court therefore finds that the reasonable fees for plaintiff's attorneys, in the preparation and trial of this case, is the sum of $500.00.

The trial court was correct in pointing out the discretion with which he is vested. His familiarity with the course of the proceedings makes him peculiarly capable of assessing a reasonable fee. Thus, "we will not interfere with the trial court's discretionary action in a matter of this kind unless there has been an abuse of discretion resulting in a manifestly incorrect allowance of fees." *In re Condemnation of Lands*, 261 Iowa 146, 151, 153 N.W.2d 706, 709 (1967).

Counsels' failure to submit an itemized time schedule leaves us with virtually no record by which to judge the reasonableness of their compensation. Some of the time expended can be determined from the trial transcript and the depositions. Mr. Aitken spent almost two hours deposing two of defendants' employees. He accompanied Mr. Feeney when he was deposed by defendants' attorneys for a little less than two hours. He was present at trial but did not actively participate. Mr. Allen represented Feeney at the trial, which appears to have lasted approximately three and one-half hours. Neither the factual nor legal issues were difficult so as to require extensive pretrial preparation. On this record we cannot say the trial court abused its discretion in setting the fee. We allow attorney's fees of $500 to appellant for this appeal.

We affirm as to the trial court's finding of two violations of the act and as to damages arising under them; we reverse as to the failure to find a third violation and remand for assessment of damages on it.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.