SHEPHERD COMPONENTS,
INC., Appellee,

v.

BRICE PETRIDES–DONOHUE &
ASSOCIATES, INC., and Peterson
Contractors, Inc., Appellants.

No. 89–1256.

Supreme Court of Iowa.

July 17, 1991.

Steven L. Udelhofen of Jones, Hoffmann & Huber, Des Moines, for appellant Brice Petrides—Donohue & Associates, Inc.

James E. Walsh, Jr., and Paul W. Demro of Clark, Butler, Walsh & McGivern, Waterloo, for appellant Peterson Contractors, Inc.

Edward J. Gallagher, Jr., and Cynthia A. Scherrman, of Gallagher, Langlas & Gallagher, Waterloo, for appellee.

Patrick M. Roby and Diane Kutzko of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for amici curiae Iowa Engineering Soc., et al.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, NEUMAN, and ANDREASEN, JJ.

**614**

SCHULTZ, Justice.

Plaintiff Shepherd Components (Shepherd) commenced this action after a wall of its cinder block building collapsed during excavation work performed on adjacent property for a city sewer project. Defendant Brice Petrides—Donohue & Associates, Inc. (Brice), an engineering firm, prepared the plans and specifications for the project. Codefendant Peterson Contractors, Inc. (Peterson), was the contractor that performed the excavation work for the sewer project. A jury returned special verdicts allocating fault and determining Shepherd's damages. In accordance with the verdicts, the trial court entered a judgment against Brice for thirty percent of the actual damages and a judgment against Peterson for the remaining seventy percent of Shepherd's actual damages and for punitive damages. The court allocated seventy-five percent of the award for punitive damages, less attorney fees, to the civil reparation fund pursuant to Iowa Code section 668A.1(2)(b) (1989). Both defendants appeal, and plaintiff cross-appeals.

The original plans and specifications did not detail any protective methods for Peterson to use in excavating the adjoining property. Peterson engaged an engineer, not named in the suit, to prepare shop drawings of a system to retain the earth along the excavation route adjacent to Shepherd's building. These drawings were approved by Brice and required that sheet piling (sheeting) be driven along the excavation route with the use of accompanying backfilling as the sewer pipe was being laid. The drawings did not provide for the excavation of earth between Shepherd's building and the sheeting.

During the excavation work, Peterson departed from the drawings by removing earth immediately adjacent to Shepherd's building and below the footings before actually installing the sheeting. Peterson maintained that the earth immediately adjacent to Shepherd's building was removed to lessen the vibration caused by the hammer used to drive the sheeting into the frozen earth. This preliminary excavation was performed on a Friday afternoon. The fol-

lowing Monday, a Peterson employee noticed that a corner of Shepherd's building was cracked and deteriorating. Work was then halted. Brice and Shepherd were notified. After a series of meetings between the parties, Peterson elected to finish its work and repair Shepherd's building when the project was completed. Peterson instructed Shepherd not to use the damaged corner while the sewer project was being completed and to place scaffolding inside the building. Shepherd maintained that this temporary corrective measure compounded the problem because its employees could not operate equipment. When the sheeting was removed three months later, the entire damaged wall collapsed.

Peterson conceded its negligence when the damage occurred, but denied the amount of monetary damages claimed by Shepherd. Brice denied any responsibility for damages to the building. The jury separately determined Shepherd's monetary damages for repairing the building, fixed overhead expenses, and loss of good will. The jury found that Shepherd was not at fault for failing to mitigate damages and did not sustain any loss of profits. The jury also found that Peterson's wrongful conduct was not directed specifically at Shepherd.

On appeal, Brice claims that the trial court erred in submitting the issue of its negligence to the jury because it neither controlled nor supervised the excavation work performed adjacent to plaintiff's building. Brice also raises issues concerning the admission of expert testimony and the award of damages to Shepherd.

Peterson challenges the amount of damages awarded. It also attacks the jury instructions on punitive damages and overhead expenses. Finally, Peterson claims the trial court should not have submitted the issue of damages for loss of good will.

On cross-appeal, Shepherd maintains that the award of punitive damages is the property of Shepherd and that any distribution to the civil reparation fund pursuant to Iowa Code chapter 668A is unconstitutional.

I. *Negligence of construction engineer.* Plaintiff's action against Brice alleged negligence in the design of the sewer project and in providing consultation services to Peterson. At the close of the evidence, Brice moved for a directed verdict, claiming that plaintiff did not present sufficient evidence of faulty design of the project. Even though the trial court overruled the motion, its jury instructions addressed only issues concerning the construction phase of the project and did not address the issue of faulty project design. Brice also asserted that it did not owe plaintiff a duty under its contractual obligations with the City. The court concluded that Brice owed a duty to plaintiff as a matter of law in providing construction review and related services. Consequently, the court instructed the jury to determine whether Brice was negligent in the performance of these services by failing to stop the construction work, allowing Peterson to continue working after discovery of the damage without acting to prevent further damages, and failing to exercise the ordinary skill of an engineer. On appeal, Brice maintains that the trial court erred in concluding that it owed plaintiff a duty.

We are guided by certain principles in considering Brice's contentions. When a contract imposes a duty upon a party, the neglect of that duty is a tort founded on contract. *Chrischilles v. Griswold,* 260 Iowa 453, 459, 150 N.W.2d 94, 98 (1967). A design engineer may be held liable for negligence in failing to exercise the ordinary skill of the profession in drafting plans and specifications or in supervising construction work. *Evans v. Howard R. Green Co.,* 231 N.W.2d 907, 913 (Iowa 1975). An engineer's potential for liability is not limited to the party with which he contracts and extends beyond privity of contract. *Id.* However, the determination of whether a contract that employs a professional imposes a duty on a noncontractual party is a matter of law to be decided by the court. *Porter v. Iowa Power & Light Co.,* 217 N.W.2d 221, 228 (Iowa 1974).

The issue in this case is whether the trial court correctly determined that Brice, in its role as a construction reviewer, owed a duty to protect plaintiff from harm. An examination of the contracts that the City entered with defendants Brice and Peterson is helpful.

The contract between the City and Brice reveals that Brice's duties were limited during the construction phase of the project. One provision generally describes the engineer's duties during the construction phase as follows:

The ENGINEER shall:

. . . .

Make periodic visits to the site of the construction to observe the progress and quality of the construction work and to determine, in general, if the results of the construction work are in accordance with the Drawings and the Specifications. On the basis of his on-site observations as an ENGINEER, he shall endeavor to guard the OWNER against apparent defects and deficiencies in the permanent work constructed by the Contractor but does not guarantee the performance of the Contractor ... The ENGINEER is not responsible for construction means, methods, techniques, sequences or procedures, time of performance, programs, or for any safety precautions in connection with the construction work. The ENGINEER is not responsible for the Contractor's failure to execute the work in accordance with the Construction Contract.

Under this paragraph, Brice was responsible for preventing any apparent defects or deficiencies in Peterson's completed work. However, the purpose of this responsibility was to protect the City rather than an adjoining landowner such as plaintiff.

Another provision of the contract limited the engineer's responsibility for construction review services as follows:

The ENGINEER has not been retained or compensated to provide design and construction review services relating to the Contractor's safety precautions or to means, methods, techniques, sequences, or procedures required for the Contractor to perform his work but not relating

to the final or completed structure; omitted services include but are not limited to shoring, scaffolding, underpinning, temporary retainment of excavations and any erection methods and temporary bracing.

Another provision of the contract provided that the purpose of on-site review services was not to protect the public from unreasonable work methods and means, but to protect the City by assuring the quality of work performed. This provision provides as follows:

> By means of the more extensive on-site observations of the work in progress, the ENGINEER will endeavor to provide further protection for the OWNER against defects and deficiencies in the Contractor's work, but the furnishing of such services shall not include construction review of the Contractor's construction means, methods, techniques, sequences or procedures, or of any safety precautions and programs in connection with the work, and the ENGINEER shall not be responsible for the Contractor's failure to carry out the work in accordance with the Construction Contract.

The respective duties of the participants in the sewer project can also be gleaned from the contract and bid specifications between Peterson and the City. Under the contract between Peterson and the City, Peterson was required to shore up, secure, and protect all foundations adjacent to the areas of excavation. As noted previously, Peterson engaged an independent engineering firm to determine methods of construction that would provide for safe excavation adjacent to plaintiff's building. This contract placed the entire responsibility for avoiding damage to adjoining property owners on Peterson. If such damages occurred, Peterson agreed to indemnify the City.

■ The contracts between the City and Brice and Peterson were prepared using forms supplied by Brice. We have previously held that a similar professional, an architect, cannot avoid a duty by making his own rules establishing when he can be held responsible in a contract with a third party. *McCarthy v. J.P. Cullen & Son Corp.*, 199 N.W.2d 362, 370 (Iowa 1972). Consequently, Brice cannot avoid responsibility simply because the City's contract with Brice excuses Brice from responsibility for the contractor's acts or because the City contract with Peterson places full responsibility on Peterson for the construction phase of the contract. We must determine whether the contract provisions gave Brice any control over the work site and the activities that caused plaintiff's harm. Our examination of the contract provisions reveals that Peterson was given the power to dictate or restrict the construction methods used at the work site. Brice was given responsibility for quality control of Peterson's completed work but had no power to control the work performed at the construction site. Under these circumstances, we conclude that Brice did not owe a duty of care to others and, consequently, cannot be responsible for Peterson's negligence. *See Lunde v. Winnebago Indus., Inc.*, 299 N.W.2d 473, 475 (Iowa 1980); *Porter v. Iowa Power & Light Co.*, 217 N.W.2d 221, 229 (Iowa 1974).

■ A general rule applicable to this case is that an engineer does not, by reason of its duty to inspect the construction site, assume responsibility for either the day-to-day construction methods utilized by the contractor or the contractor's negligence. *Walker v. Wittenberg, Delony & Davidson, Inc.*, 242 Ark. 97, 106–07, 412 S.W.2d 621, 630 (1967); *Moundsview Indep. School Dist. No. 621 v. Buetow & Assocs.*, 253 N.W.2d 836, 839 (Minn.1977); *Waggoner v. W & W Steel Co.*, 657 P.2d 147, 151 (Okla.1982). Consequently, we conclude that Peterson, the contractor, not Brice, was contractually required to supervise the various construction jobs and employ all reasonable precautions to prevent damage to adjoining property.

Plaintiff claims that Brice was at the construction site and should have stopped the work. The fact that Brice visited the site periodically does not change the fact that Brice had no legal duty to interfere with Peterson's judgment on which construction procedures to utilize. *Vonasek v.*

*Hirsch & Stevens, Inc.*, 65 Wis.2d 1, 11–12, 221 N.W.2d 815, 820 (1974). Plaintiff also urges that Brice should have stopped the work after the crack in the building developed. Even if Brice had authority to stop work that did not conform with the contract, he did not have contractual authority to stop unsafe construction methods which were under the sole control of Peterson. *Wheeler & Lewis v. Slifer*, 195 Colo. 291, 296, 577 P.2d 1092, 1095 (1978); *Fruzyna v. Walter C. Carlson Assocs., Inc.*, 78 Ill. App.3d 1050, 1058–59, 34 Ill.Dec. 385, 391–92, 398 N.E.2d 60, 66–67 (1979).

■ Plaintiff also urges that Brice assumed a duty by instructing Peterson's employees on how to perform their job. In support of this contention, plaintiff offers an incident in which Peterson was told to "cease and desist" work that did not comply with the contract. This incident was a matter of quality control rather than supervision of construction work methods that affected adjoining property. Furthermore, this case was not presented to the jury on the theory that Brice assumed a duty to protect plaintiff. For these reasons we reject plaintiff's contention.

Plaintiff also argues that its expert witness opined that under general standards of the engineering profession, Brice had authority to take action to stop the work. As previously noted, the function of the court is to determine the duties of the parties. General standards of the engineering profession may aid interpretation of ambiguous contractual terms. However, we believe that the duties of the parties were unambiguously stated in the contracts and that the expert's testimony provides no aid in our interpretation of the contract.

■ In summary, our review of the responsibilities placed upon Brice in the contracts leads to our conclusion that Brice had neither responsibility for, nor control over, the construction procedures that were employed adjacent to plaintiff's building and caused the damages. We conclude that Brice owed plaintiff no duty of care. Consequently, we hold that the trial court erred by not sustaining Brice's motion for a directed verdict.

In view of our holding, we need not address Brice's contention that the court erred by admitting certain testimony of a previously unidentified witness.

II. *Damages.* Peterson claims that errors were committed in both the award of punitive damages and in the inclusion of overhead expenses and good will as a part of plaintiff's actual damages. We address these contentions in turn.

A. *Punitive damages.* The trial court submitted the issue of damages for jury consideration. The jury determined that Peterson's conduct constituted willful and wanton disregard for the rights or safety of another and assessed punitive damages in the amount of $26,000 against Peterson.

Peterson contends that a punitive damage award is not appropriate in this case. Peterson conceded liability in this case, but urges that it had no responsibility for property damage to buildings caused by excavation work performed on adjoining land. Peterson also urges that its conduct did not amount to willful or reckless disregard of the rights of another. Furthermore, Peterson does not challenge the punitive damage award against it on the basis of its corporate status.

■ The allowance of an award of punitive damages is not a matter of right and rests with the factfinder. *Feeney v. Scott County*, 290 N.W.2d 885, 892 (Iowa 1980). An award of punitive damages is appropriate in order "to punish an offending party or discourage others from similar wrongful conduct." *Id.* A determination of whether punitive damages are appropriate depends upon the existence of either actual or legal malice. *Id.* A showing of wrongful conduct committed or continued with a willful or reckless disregard for another's rights is sufficient to show legal malice. *Id.*

■ Based on our review of the record, we conclude that the trial court did not err in submitting the issue of punitive damages to the jury. Peterson excavated immediately adjacent to plaintiff's building and to a depth below the footings without using the required sheeting. When Peterson discovered that the building had cracked, it continued the work in the same manner. We recognize that whether or not the

cracked corner of the building could have been repaired was in dispute. However, Peterson continued working despite three letters that Brice sent to Peterson expressing concerns over further deterioration of the wall. Plaintiff asked Peterson's representative to repair the wall and was told that the wall could not be repaired. Peterson continued to use the same work methods and ignored plaintiff's complaints. Peterson knew that the construction work was destroying the wall and depriving plaintiff of use of the building. Despite this knowledge, Peterson continued the construction work which increased plaintiff's problems and culminated in the entire collapse of the wall. Based on these findings, we conclude that the trial court's decision to submit the matter of punitive damages to the jury was proper.

■ B. *Overhead expenses.* On appeal, Peterson claims that the trial court erred in instructing the jury that it could award damages for certain overhead expenses. However, Peterson does not provide a citation to the record showing where error was preserved on this claim. Claims unsubstantiated in the record are not allowed on appeal. *Tratchel v. Essex Group, Inc.,* 452 N.W.2d 171, 175 (Iowa 1990). In addition, our examination of Peterson's objection to the jury instructions and motion for directed verdict do not reveal that Peterson raised the same contention before the trial court that it now raises on appeal. The only grounds for objections that we may consider on appeal are those specified in objections to the trial court. *Moser v. Stallings,* 387 N.W.2d 599, 604 (Iowa 1986). Therefore, we conclude that error was not preserved on the issue of overhead expenses.

■ C. *Good will.* In a posttrial motion, Peterson claimed that no evidence substantiated an award of damages for loss of good will on the ground that plaintiff's business was not profitable. Peterson contends that the trial court erred by denying this motion. Our examination of the motion for a directed verdict and the objections to the instructions indicates that plaintiff's claim was first raised in the posttrial motion. We do not decide the issue of error preservation because we reject Peterson's claim on the merits. The trial court defined "good will" as "the value a business has acquired as a consequence of public patronage and encouragement because of its local position or reputation." Even though profitability may be related to "good will," the two do not necessarily depend upon each other. Thus, this contention has no merit.

■ III. *Distribution of punitive damages.* Plaintiff moved for a new trial pursuant to Iowa Rule of Civil Procedure 244. It alleged that the jury's special verdict finding that the conduct of Peterson was not directed specifically at plaintiff was not supported by overwhelming evidence presented at trial. Iowa Code section 668A.1(1)(b) requires the jury to answer a special interrogatory indicating whether the defendant's conduct was directed specifically at the claimant. The jury answered this question in the negative. Consequently, the trial court ordered that twenty-five percent of the punitive damage award be paid to plaintiff and the remaining seventy-five percent be paid into the civil reparation trust fund. Iowa Code § 668A.1(2)(*b*). Plaintiff asks that the trial court's distribution of its punitive damage award be set aside and that it be awarded the entire amount of the punitive damage award.

An adverse verdict may be set aside and a new trial granted if the verdict is not sustained by sufficient evidence. Iowa R.Civ.P. 244(f). Additionally, the trial court has wide discretion in deciding whether a new trial should be granted. *Thomas Truck & Caster Co. v. Buffalo Caster & Wheel Corp.,* 210 N.W.2d 532, 536 (Iowa 1973). We have stated that "[o]nly when the evidence clearly shows the trial court abused its discretion will we interfere." *Id.*

The trial court concluded that it could not rule as a matter of law that no evidence supported the jury's finding that Peterson's disregard for the rights of others was limited to plaintiff. We agree with the trial court's ruling and further hold that the court did not abuse its discretion. The jury could have determined that defendant's wrongful conduct was not specifically directed at plaintiff.

Plaintiff also contends that the punitive damage award constitutes property entitled to constitutional protection under both the federal and Iowa constitutions. When enacted, Iowa Code section 668A.1 applied to all cases filed on or after July 1, 1986. 1986 Iowa Acts ch. 1211, § 47. Plaintiff argues that section 668A.1 constitutes a taking of property that violates the due process and equal protection clauses of the fourteenth amendment of the United States Constitution and article I, sections 6 and 9 of the Iowa constitution.

■ It has been held that a plaintiff has no vested right in a particular measure of damages. *American Bank & Trust Co. v. Community Hosp.*, 36 Cal.3d 359, 368, 683 P.2d 670, 676, 204 Cal.Rptr. 671, 677 (1984); *cf., Samsel v. Wheeler Transp. Servs.*, 246 Kan. 336, 358, 789 P.2d 541, 555 (1990). Other courts have stated that punitive damages are remedial and that a plaintiff has no vested right to such damages prior to the entry of a judgment. *Vaughan v. Taft Broadcasting Co.*, 708 S.W.2d 656, 660–61 (Mo.1986); *Meech v. Hillhaven West, Inc.*, 238 Mont. 21, 47–48, 776 P.2d 488, 504 (1989) (see cases cited therein). Consequently, a statutory provision limiting a punitive damage award may be applied retrospectively without violating due process or equal protection. *Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 739–40 (8th Cir.1985); *see also American Bank & Trust Co.*, 36 Cal.3d at 367–71, 683 P.2d at 675–77, 204 Cal.Rptr. at 676–78.

■ We have stated that punitive damages are not allowed as a matter of right and are discretionary. *Berryhill v. Hatt*, 428 N.W.2d 647, 656 (Iowa 1988). We have also indicated that punitive damages are not intended to be compensatory and that a plaintiff is a fortuitous beneficiary of a punitive damage award simply because there is no one else to receive it. *Berenger v. Frink*, 314 N.W.2d 388, 391 (Iowa 1982). Under our view of punitive damages, we adopt the position taken by the court in *Meech* and *Vaughan* that plaintiff did not have a vested right to punitive damages prior to the entry of a judgment. Consequently, we hold that the trial court's distribution of punitive damages does not violate plaintiff's constitutional rights.

IV. *Summary.* We hold that Brice did not owe a duty to protect plaintiff from damages caused by the construction procedures used by Peterson. Consequently, we reverse the judgment entered against Brice. We further hold that the trial court did not err in the award of actual damages. Peterson has admitted liability, therefore on remand the trial court shall enter judgment against Peterson for the full amount of actual damages.

We affirm the award and distribution of punitive damages. We assess two-thirds of the cost of this appeal against Peterson and one-third against Shepherd.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON THE APPEAL; AFFIRMED ON THE CROSS-APPEAL.