# IN THE COURT OF APPEALS OF IOWA

No. 16-0821
Filed October 25, 2017

**JEFFREY BURDICK SR., WANDA BURDICK, and JEFFREY BURDICK JR.,**
     Plaintiffs-Appellants,

**vs.**

**INTERSTATE POWER AND LIGHT COMPANY,**
     Defendant-Appellee.
_____

Appeal from the Iowa District Court for Kossuth County, Nancy L. Whittenburg, Judge.

The plaintiffs appeal the district court's orders granting the defendant's posttrial motion for judgment notwithstanding the verdict, or alternatively, a new trial. **REVERSED AND REMANDED.**

David J. Siegrist of Siegrist & Jones, P.C., Britt, and Thomas W. Lipps of Peterson & Lipps, Algona, for appellants.

Mark A. Roberts and Dawn M. Gibson of Simmons Perrine Moyer Bergman PLC, Cedar Rapids, for appellee.

Heard by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

Jeffrey Burdick Sr., Wanda Burdick, and Jeffrey Burdick Jr. appeal the district court's posttrial order that vacated the jury's verdict in favor of the Burdicks. The district court granted Interstate Power & Light Company's motion for judgment notwithstanding the verdict or, alternatively, granted its motion for new trial. The Burdicks assert the district court should not have granted the motions because there was sufficient evidence introduced at trial to support the jury's award of damages. Because we agree there was sufficient evidence of damages from which the jury could have approximated the Burdicks' lost profits, we reverse the district court's ruling on Interstate's posttrial motions.

**I. Background Facts and Proceedings.**

In October 2013, the Burdicks filed suit against Interstate alleging Interstate's electrical system caused damage to the Burdicks' dairy operation. The Burdicks alleged Interstate was negligent in its maintenance of the system, which allowed stray voltage to come into contact with their dairy herd causing decreased milk production and a reduction in breeding. The Burdicks also asserted a nuisance claim. The case proceeded to an eight-day jury trial in December 2015. The jury returned a verdict in favor of the Burdicks, concluding Interstate was 80% negligent and assigning 20% fault to the Burdicks.[1] The jury awarded damages in the amount of $500,000. The court entered judgment against Interstate for $400,000 ($500,000 x 80%) on the negligence claim.

---

[1] The jury also found Interstate created a nuisance but concluded the Burdicks did not prove they sustained damages as a result of the nuisance.

Thereafter, Interstate filed a posttrial motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. Interstate alleged the Burdicks failed to offer evidence at trial from which the jury could calculate damages for lost profits. Alternatively, Interstate asserted it was entitled to a new trial based on its belief the verdict was the result of a jury compromise in light of the fact it bore no relationship to the evidence presented at trial. The Burdicks resisted the motion asserting the jury could have reasonably concluded they had no expenses related to the lost milk production because the jury could have believed the Burdicks had already absorbed all expenses. The district court granted Interstate's motion concluding:

> Plaintiffs did not present significant evidence of their anticipated revenues. Instead, they only presented an estimate of lost milk and a published figure for the average price of milk per year. There was no record introduced at trial to support the estimated lost milk production. Plaintiffs provided no testimony or exhibits which explained the calculation of the estimated lost milk or average price of milk. Additionally, Jeffrey Burdick Sr., in testifying on the loss in milk production, used a published average milk price, but no actual lost production and no actual price that Plaintiffs were being paid. There was no explanation as to how the estimated average price of milk related to Plaintiffs' actual price during the years in question. Plaintiffs only alleged that they were supposed to produce a certain quantity of milk, which quantity was not achieved, that milk at the time of their injury was, in general, sold at an average price. Such a presentation fails to provide the jury with the resources necessary to determine, with a reasonable degree of certainty, what Plaintiffs' gross revenues were for the relevant time period.
>
> Perhaps a greater omission was Plaintiffs' lack of foundation or argument for the jury to determine what the variable expenses were from the deprivation of milk production. No testimony or exhibits were provided about the actual costs Plaintiffs incurred or avoided due to the alleged change in production. In Plaintiffs' Brief in Resistance, Plaintiffs argue that it was possible they had no avoided costs. However, such a contention goes against the testimony by their own witness—Jeffrey Burdick Sr.—and the typical operations of a business. If there is less production, costs

associated with the profit from the sale of the produced goods are typically affected in some way. But Plaintiffs presented no evidence that would indicate these added or avoided costs existed. Plaintiffs entirely failed to address how their alleged loss of milk production affected milking costs, feeding costs, transportation costs, or the costs of veterinary services. While Plaintiffs now contend the evidence presented at trial could be implied toward a finding that all of these costs were already paid and therefore unavoided, Plaintiffs testified they paid for the transportation of their milk 100 miles to a dairy processing plant, bought some feed, and used veterinary services but never testified to the specific dollar costs of those expenses or how lack of milk production affected those costs. The fact that Plaintiffs produced the majority of their own feed and supplied their own land and labor does not provide a basis for a jury to determine Plaintiffs already absorbed all costs which would typically exist—and which they may have partially avoided—in the production of milk on a dairy farm.

Plaintiffs seem to argue in their Resistance that they provided a sufficient basis for a jury determination of damages based on Jeffrey Burdick Sr.'s testimony of lost milk. However, as discussed above, the determination of lost profits consists of the subtraction of variable expenses from revenues. While lost milk production does inform the determination of lost revenue, it does not account for the entirety of the calculation of lost profits. Plaintiffs failed to provide a sufficient evidentiary basis for the jury to calculate with any degree of reasonable certainty the actual amount of Plaintiffs' lost profits resulting from Defendant's alleged negligence. In making the determination that Plaintiffs' were entitled to $500,000 in lost profits, the jury most likely confused lost production with lost profits. Such a determination was contrary to the jury instructions on damages under negligence; therefore, Defendant's Motion for JNOV should be sustained.

The district court also went on to conclude, alternatively, Interstate was entitled to a new trial based on the fact the jury's award lacked evidentiary support and indicated "an unaided and uneducated guess at how much profit the dairy was likely to realize out of their lost milk production revenue." The court vacated the judgment entered in favor of the Burdicks and instead entered a judgment in favor of Interstate. The Burdicks appeal.

## II. Scope and Standard of Review.

We review the district court's ruling on a motion for judgment notwithstanding the verdict for correction of errors at law. *Thornton v. Am. Interstate Ins. Co.*, 897 N.W.2d 445, 460 (Iowa 2017).

> "Our role is to decide whether there was sufficient evidence to justify submitting the case to the jury when viewing the evidence in the light most favorable to the nonmoving party." To justify submitting the case to the jury, substantial evidence must support each element of the plaintiff's claim. We will find evidence is substantial if "reasonable minds would accept the evidence as adequate to reach the same findings."

*Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 18 (Iowa 2014) (citations omitted).

"The scope of our review of a district court's ruling on a motion for new trial depends on the grounds raised in the motion." *Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 859 (Iowa 2001). If the motion is based on a discretionary ground, "we review it for an abuse of discretion," "[b]ut if the motion is based on a legal question, our review is on error." *Id.* (citation omitted). We review the court's ruling on a motion for a new trial based on the sufficiency of the evidence supporting the jury verdict for abuse of discretion. *Shepherd Components, Inc. v. Brice Petrides-Donohue & Assocs., Inc.*, 473 N.W.2d 612, 618 (Iowa 1991).

## III. Judgment Notwithstanding the Verdict.

The Burdicks assert the district court incorrectly concluded there was a lack of evidence to support the jury's verdict. The Burdicks claim the jury could have determined the expenses based on the evidence submitted, particularly the testimony provided by Interstate's expert, Terry Smith. Smith submitted graphs

showing the monthly gross revenue and testified as to the net income of the Burdicks' dairy operation, which the Burdicks assert the jury could have used to calculate a profit/expense margin and then the jury could have used that margin to arrive at an expense figure to deduct from the lost revenue number provided. The Burdicks claim the district court erred in granting Interstate's posttrial motion because it failed to consider the evidence from Interstate's expert.[2]

In defense of the district court's posttrial ruling, Interstate notes the calculations the Burdicks perform on appeal to arrive at the jury's damages figure were never proposed to the jury at trial as a way to reach a damages figure. The only damage calculation provided to the jury was in the form of a jury instruction, which told the jury to calculate the lost profits "by subtracting variable expenses from revenues." Interstate contends that while the Burdicks supplied the revenue number ($860,000), they wholly failed to provide the jury with any variable expense number. Interstate notes the only expense argument the Burdicks made to the jury was during rebuttal closing argument when the Burdicks' counsel implied there would have been no additional expenses to achieve this additional revenue because all of the expenses had already been incurred and paid by the Burdicks. Interstate maintains because the Burdicks did not provide a variable expense number, submit evidence that the expense number was zero, or provide the jury direction on how to arrive at the variable expense number, the

---

[2] The Burdicks also assert the district court, in ruling on the posttrial motions, considered deposition testimony of Jeffrey Burdick Sr. that was not admitted during the course of trial. Upon our review of the district court's decision, we note the district court quoted the unadmitted deposition testimony but only in the portion of the ruling where the district court was outlining the claims being made by the parties in their posttrial briefs. The deposition testimony was not included in the analysis portion of the district court's ruling. We thus conclude the district court did not improperly consider the unadmitted evidence in ruling on the motions.

district court correctly granted the judgment notwithstanding the verdict due to the lack of evidence to support the jury's damages number.

The Burdicks correctly note that we must consider all the evidence, not just the evidence offered by the plaintiffs, when determining whether substantial evidence supports the jury's verdict. *Lathrop v. Knight*, 297 N.W. 291, 292 (Iowa 1941) ("In passing upon [defendant's] motion for a directed verdict, it was the duty of the trial court to consider the evidence in the light most favorable to the [Plaintiff], and to consider *all* of the evidence, not merely that of the [defendant]." (emphasis added)). In addition, "damages need not be shown with mathematical certainty." *Data Documents, Inc. v. Pottawattamie Cty.*, 604 N.W.2d 611, 616–17 (Iowa 2000) (citations omitted). However, the "plaintiff must at least present sufficient evidence to allow the factfinder to make an approximate estimate of the loss." *Id.* Lost profits are recoverable as damages "so long as the profits are not based on conjecture and speculation." *Yost v. City of Council Bluffs*, 471 N.W.2d 836, 840 (Iowa 1991).

> There is a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. Damages are denied where the evidence is speculative and uncertain whether damages have been sustained. But "[if] the uncertainty lies only in the *amount of damages*, recovery may be had if there is proof of a reasonable basis from which the amount can be *inferred* or *approximated*."

*Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 309 (Iowa 1998) (alteration in original) (emphasis added) (citation omitted).

The instruction submitted by the court to the jury directed them how to calculate the Burdicks' damages. The Burdicks did not object to this instruction, nor do they contend on appeal that it was an incorrect statement of the law. In

order to calculate the loss sustained by the Burdicks, the jury had to subtract the "variable expenses from revenues." Jeffrey Burdick Sr. supplied a single number for lost revenue over a five-year period: $860,000. But he also testified his lost revenue number "did not have anything to do with my cost."

The Burdicks' counsel implied to the jury during rebuttal closing argument that there were no variable expenses for the Burdicks to achieve this additional revenue, but counsel's argument is not evidence, and the evidence that was offered at trial did not support the argument. Jeffrey Burdick Sr. admitted to having to purchase additional feed for his cows because the land he farmed did not produce sufficient crops during the relevant years. If the cows were going to produce an additional $860,000 in revenue from milk sales during the relevant years in the absence of stray voltage, it is logical to conclude from his testimony the cows would have required additional food to produce that milk, food that would have been purchased on the open market due to the lack of crops on the Burdicks' farm. In addition, Jeffrey Burdick Sr. testified there were costs involved in shipping milk from his farm to the dairy. Specifically, he testified it "[c]osts a little over a dollar a hundred [pounds] to ship milk" from his farm to the dairy 100 miles away. However, he did not testify how much milk, in terms of pounds, the $860,000 lost revenue represented.

While the Burdicks did not submit evidence of an expense figure, the jury could have arrived at an expense figure by using the graphs submitted by Interstate's expert, Smith. *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 845 (Iowa 2010) ("Even the weakest cases may gain strength during the defendant's presentation of the case."). Smith explained his chart,

exhibit 505, to the jury, describing the Y axis as "dollars of monthly milk revenue" for the Burdicks from April 2009 until early 2014. He explained he calculated "the amount of milk sold, times the prevailing milk price by month." Smith went on to tell the jury about the Burdicks' costs for feed—as indicated on their tax returns—and his calculation of their net income for 2010-2013, which was $55,000 each year.

In support of their claim, the Burdicks assert one of the calculations the jury could have done included adding up the monthly gross milk sales illustrated on Smith's bar graph by approximating the value represented by each monthly column. Then the jury could have divided the net income figure supplied by Smith by the annual gross sales from the bar graph. The Burdicks claim this calculation would have represented the profit/expense ratio for the operation, which the jury could have then multiplied by the $860,000 lost milk production figure to arrive at a lost profits number. In addition, the Burdicks assert there was also evidence in the record to support costs he incurred as a result of the stray voltage including acquiring an additional 138 cows, priced at $2500 apiece,[3] based on the Burdicks' assertion the stray voltage affected breeding, in addition to milk production.

No matter how the jury arrived at the verdict award here, the evidence is clearly sufficient in the record that the Burdicks sustained damages. "While it may be hard to ascertain such a loss with preciseness and certainty, the wronged parties should not be penalized because of that difficulty. Difficulty in

---

[3] Interstate's expert testified dairy cows could range in price from $2000 to $2500 each, while Jeffrey Burdick Sr. testified they cost approximately $1750.

ascertaining the amount of damages does not alone constitute a reason for denying recovery . . . ." *Bangert v. Osceola Cty.*, 456 N.W.2d 183, 190 (Iowa 1990). In addition, the data supplied by Smith provided a basis from which the jury could have approximated Burdick's lost profits. *See Olson*, 579 N.W.2d at 309 ("[If] the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be *inferred* or *approximated.*" (emphasis added)). We find this evidence "sufficient to remove the issue of damages from the realm of speculation." *Bushman v. Cuckler Bldg. Sys., a Div. of Lear Siegler, Inc.*, 421 N.W.2d 145, 148 (Iowa Ct. App. 1988) (noting when "factual data [is] presented which furnish[es] a basis for compilation of probable loss of profits, evidence of future profits should be admitted and its weight, if any, should be left to the jury"), *vacated on other grounds by Chiafos v. Mun. Fire & Police Ret. Sys. of Iowa*, 591 N.W.2d 199, 203 (Iowa 1999); *see also Lund v. McEnerney*, 495 N.W.2d 730, 733 (Iowa 1993) ("The proceedings in the jury room and the manner in which the jury reaches its verdict, in the absence of misconduct or fraud, inhere in the verdict." (citation omitted)).

We disagree with the district court there was not substantial evidence to support the damages awarded by the jury, and we reverse the district court's grant of Interstate's motion for judgment notwithstanding the verdict.

## IV. Motion for New Trial.

The district court, alternatively, granted Interstate a new trial based on its determination that the damages evidence was insufficient. In granting the new trial, the district court stated:

Here, for the reasons stated above, the jury did not have an adequate basis with which to perform a reasonably certain calculation of damages. Plaintiffs only provided the jury with an estimated amount of lost milk production revenue totaling $860,000. The jury, however, awarded Plaintiffs $500,000. No other applicable evidence was provided to the jury to warrant lowering the amount of lost production revenue by $360,000. . . . The jury's award of $500,000, therefore, lacks evidentiary support and indicates an unaided and uneducated guess at how much profit the dairy was likely to realize out of their lost milk production revenue. Because of such an unsupported verdict award, the court SUSTAINS defendant's alternative motion for a new trial.

The Burdicks assert all of the reasons the district court was wrong to grant Interstate's judgment notwithstanding the verdict also apply to their claim the district court should not have granted Interstate a new trial. They note Interstate's expert, Smith, provided the necessary data from which the jury could have calculated the variable expenses associated with their estimated lost revenue. The Burdicks claim the question of how the jury arrived at the $500,000 damage award improperly delves into the jury's deliberative process. *See Weatherwax v. Koontz*, 545 N.W.2d 522, 524 (Iowa 1996) (ruling juror affidavits and testimony regarding how the jury reached the damages figure cannot be admitted into evidence "to show the jury's thinking processes were incorrect" because such "deliberative matters" "inhere in the verdict").

As noted above, we review the district court's grant of a new trial in this case for an abuse of discretion. *Shepherd Components*, 473 N.W.2d at 618. "[T]he granting of a new trial will not be interfered with on appeal except in a clear case of abuse of discretion." *Burke v. Reiter*, 42 N.W.2d 907, 913 (Iowa 1950). "[W]e are slower to interfere with the grant of a new trial than with its denial." *Winchester v. Strottman*, 535 N.W.2d 480, 481 (Iowa Ct. App. 1995). But "when

the evidence amply supports the verdict, a trial court abuses its discretion by granting a new trial on the ground that it would have reached a different result. *Id.* As we noted above, there was sufficient evidence the Burdicks sustained damages in this case, and there was evidence from which the jury could have approximated the Burdicks' lost profits. We thus conclude the district court abused its discretion in granting Interstate's alternate motion for a new trial. We reverse the district court's decision and remand for the entry of judgment in favor of the Burdicks consistent with the jury's verdict.

**REVERSED AND REMANDED.**