# Fowler *versus* Sergeant.
# Sergeant *versus* Fowler.

1. In cases against surgeons for malpractice, it is usual to inform the jury of the circumstances of the respective parties.
2. On a trial against a surgeon for malpractice, it is proper to allow the plaintiff to exhibit the injured limb to the jury.
3. If there was want of ordinary skill in defendant in not detecting the kind of injury, for fifteen days, and the patient suffered pain and incurred expense in consequence thereof, even though he afterwards refused to submit to a proper remedy, he may recover damages for this special injury.
4. Neglect to produce evidence known to be in one's power, is suspicious, and thus evidence against him.
5. A physician or surgeon is not chargable for ignorance of a case, if he prescribes for it rightly.

Error to the Court of Common Pleas of *Washington county*, by both plaintiff and defendant.

John Sergeant, the plaintiff below, was thrown from his horse on the 3d of June, 1850, and received by the fall an injury to his

[Fowler *v.* Sergeant.]

hip joint, from which he lost the use of his limb, and will probably be a cripple for life.

The defendant, Dr. Fowler, was sent for, and, being absent, his son visited the party injured. He made a slight examination at the road side, without removing Sergeant's clothes. He was carried into a house near the place of injury, and being stript, an examination was made. The hip and shoulder were much bruised, and the son of the defendant, having rotated the thigh, found that it revolved freely in its socket, and was of opinion, that it was a very bad contusion, but did not consider there was either a dislocation or fracture. The plaintiff was removed home the same evening, and on *Thursday of that week,* the defendant visited him for the first time. He made an examination of the injured limb, by severe extension, as well as other means, and found it of the same length as the other. He directed applications of cold water to the hip, for the purpose of reducing the inflammation. He informed plaintiff that his hip was neither out of place nor broken, although when the limbs were stretched, the toes of the injured leg fell in.

On the Sunday after the accident, the defendant and his son visited Sergeant, and having again examined the limb, directed applications of liniment and cold water, considering it a severe bruise : and gave him " into the *hands of his wife, declaring that he needed no further medical treatment, and that he would be about in a few days,*" and directed her to continue the same application, and send for him if his attendance was considered necessary.

On the following Sunday, the *fourteenth day* after the accident, the doctor was sent for, and repaired immediately to Sergeant's house. The doctor and his son, at that time, again examined the limb thoroughly, applied severe extension and rotation, whilst he was lying on the bed, the son having his ear close to the patient's hip. They discovered, that the injured limb was one-half inch shorter than the other, and cupping was resorted to for the purpose of still further reducing the inflammation.

On the next day, the doctor visited the patient, and took with him a splint. Sergeant asked the doctor how long he would be confined with the splint, and on being informed it would confine him in bed for six weeks, he said he was weak in his breast,— coughed a great deal,—thought it would kill him,—thought he would die at any rate, and might as well die without being tortured. The doctor said he would insure it not to kill him,—that he would get well if he would submit to the treatment ; but if he did not submit he would be a cripple for life. A gentleman present, inquired of the old doctor, " Whether *it was out of place, or what was the matter ? The doctor said he could not tell, that no man*

[Fowler *v.* Sergeant.]

*could tell unless the hip was cut open.*" · Under this statement Sergeant refused to have the splint put on.

The doctor remained with the patient some two hours, and on his continued refusal to have the splint applied, left, telling him that he must get another doctor,—that he would attend him no longer, as he refused the use of the splint ; and saying " if you are a cripple, don't blame me."

The medical testimony established the fact that the injury was a fracture of the neck of the thigh bone, within, or partly within the capsular ligament, and that such a fracture was difficult of detection and cure,—that it could not be detected until displacement, although in case of dislocation the shortening would be immediate,—that the shortening of the limb and the lessening of the hip are the first indications of a fracture. At the time of the trial, the injured limb was two and a half inches shorter than the other.    The physicians, at the trial, agreed that the application of cold water, cupping, &c., was the proper remedy for reducing the local inflammation.

Upon the trial, the plaintiff, under exception, was allowed to inquire into the pecuniary ability of the defendant and the circumstances of the plaintiff.   The plaintiff was allowed to exhibit himself to the jury, that they might determine for themselves the nature of the injury received ; and the surgeons were only permitted to examine him in the same way in which he was examined by the jury.

The court, GILMORE, P., instructed the jury, that " if there was a want of ordinary skill in not detecting the kind of injury received, for fifteen days, and in consequence of the want of proper treatment, he suffered pain and incurred expense which might have been saved, although the patient afterwards refused to submit to the application of the proper remedy, we do not see why damages might not be recovered for this special injury.   But the jury, before they can allow for this, must be satisfied, that there was a want of ordinary skill in not detecting the character of the injury before that time ; and further, that it was improper treatment not to apply the true remedy before that time."

The court expressed astonishment, that any doubt could exist in the mind of the defendant with regard to the nature of the injury, as it was promptly and certainly determined by the surgeons who were examined.   And the plaintiff's counsel, in his closing address to the jury was allowed to comment upon the fact, that the defendant's son was not examined ; calling it the damning feature of the case.

The introduction of the evidence above referred to, and the instructions of the court, constitute the errors complained of by Dr. Fowler.

The error complained of by Sergeant, although amplified in

various points, is all contained in the following point and answer:

"That Sergeant was not required by law to submit to experiments, if the physicians informed him at the time that "they could not tell whether it was a bruise, a strain of the ligaments, or a fracture of the bone."

Ans. "We say again, that if the treatment offered was right, and offered at the right time, or in time to effect a cure, no want of confidence in the physician would excuse the patient, so far as to mulct the defendant in damages."

*Montgomery*, for Sergeant.

*Watson, Cowan, Acheson,* and *Wilson,* for Dr. Fowler:

Contended that it was an action arising *ex contractu,* and that the true measure of damages was the actual loss and suffering sustained by the plaintiff; and, also, that the court erred in allowing plaintiff's counsel to comment, in their argument to the jury, upon the fact that defendant did not call his son to the witness stand, and referred to *Good* v. *Mylin,* 1 H. 538. Upon the question of the measure of damages, they referred to 2 Greenleaf, Ev., § 253, 254; Sedgwick on Dam. 31, p. 206, 210; 2 Greenleaf, Ev., § 269; *Forsyth* v. *Palmer,* 2 H. 97.

The opinion of the court was delivered November 27, 1856, by LOWRIE, J.—There being no definite measure of damages in such cases as these, it is usual to inform the jury of the circumstances of the respective parties, and we see no error in the mode of doing it in this case. It was right, also, to allow the plaintiff to exhibit the injured limb to the jury, because a sight is always better than a description, and the terms imposed upon the plaintiff by the court, were for the benefit of the defendant, of which he could not complain, unless he had afterwards asked for more and been refused.

Why the defendant should not compensate the plaintiff for the sufferings of a fortnight's unskilful treatment, it is impossible for us to find any reason, and we must say that the court was right; and if the court could not understand why such treatment should continue so long, we cannot say that they were in error in saying so, especially when they left the question to the jury. The neglect to produce evidence that is known to be in one's power, is necessarily suspicious, and thus evidence against him; and it was on this principle that the court allowed the counsel to comment on the defendant's failure to call his son, who aided him in his attendance on the case, and we do not see that this was erroneous.

The above remarks relate to the defendant's exceptions.　But the plaintiff has some likewise, and we proceed to consider them.

This we can do very briefly, for there is really but one thought in them all, as there was but one thought variously expressed in the different parts of the charge complained of.　That thought may be fully expressed thus:—A physician or surgeon is not chargeable for ignorance of a case if he prescribes for it rightly.　Understanding it thus, it is impossible for us to say that the instructions were erroneous.

Judgment affirmed and record remitted.